WALTER RICHARD MISCH, *p.a.* *vs.* THOMAS MONTGOMERY
WALTER P. MISCH *vs.* SAME.

JULY 21, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an action brought by Walter R. Misch, a minor, by his father and next friend, Walter P. Misch, against Thomas Montgomery, a minor, to recover compensation for the loss of sight in plaintiff's left eye, which injury is alleged to have been caused by the defendant striking the plaintiff's left eye with a stone fired from a slingshot. The declaration is in three counts; the first is in trespass, substantially alleging the firing of a missile from a slingshot at the plaintiff, and the second and third

counts sound in negligence, alleging the negligent handling and operation of a slingshot.

The case was tried before a justice of the superior court, without the intervention of a jury, and resulted in a decision for the plaintiff in the sum of $15,000. To this decision the defendant duly excepted and has brought his bill of exceptions to this court.

Walter P. Misch, the father, also brought an action against the defendant to recover for the expense to which he was put as a result of the injuries to his son's eye. This action, which was tried with the main case, resulted in a decision in plaintiff's favor for $500, to which the defendant also excepted and duly prosecuted his bill of exceptions to this court.

As the disposition of this latter case is dependent upon the decision of the main case we shall, in the discussion that follows, confine ourselves, at first, to the main case.

The plaintiff, Dicky Misch, as he was called by his counsel during the trial, is a boy who was in his tenth year at the time of the injury to his eye. The defendant was then thirteen years of age. The accident to the plaintiff occurred in the late afternoon or early evening of November 7, 1936, when it was dusk or almost dark, in the yard in the rear of the house of a Mr. Paton on Narragansett Boulevard, which premises adjoin those of Thomas Reed Montgomery, the father of the defendant. On that afternoon, William G. Paton, the ten year old son of Mr. Paton, was playing in his yard with the plaintiff and another boy of about the same age, Chester Vallie. It appears from the evidence that the three boys had been playing together for the greater part of the day at the extreme rear of the yard where it slopes down to the shore of the Providence River, but as evening approached they transferred their activities to that portion of the yard immediately in the rear of the Paton house. At that time, in the adjoining rear yard of the Montgomery property,

Ruth Montgomery, the ten year old sister of the defendant, was playing with Patricia Barrows, a young girl about her own age.

According to Billy Paton, who testified for the plaintiff, the boys began to tease the girls by throwing dahlia stalks at them. And Chester Vallie, who also testified for the plaintiff, testified: "We saw the girls on the steps, when it was suggested to go over and tease them, so we did, went up there with the sticks, and they came up and threw them back." Patricia Barrows, in her testimony for the plaintiff, said that the boys came up near them and started to tease them by throwing dahlia stalks at them from the Paton yard and that they broke them up and threw them back. And she also testified that Ruth Montgomery went into the house and complained that the boys were teasing her and Patricia but that her mother told her she would have to come into the house unless she stopped. Patricia further testified, "So, we went out again, and Tommy came home, and he said he would be on our side, and he went into the house, and he got a slingshot and came out." She testified further that Ruth later protested to her father when he came home that the boys were teasing them and that her father told Ruth "to go on playing, and, if they didn't stop to come into the house."

It was about fifteen minutes after Tommy came out of the house with his slingshot that Dicky Misch received his injury. The only evidence in the record as to what struck him in the eye is the following testimony of Dicky: Q. "Can you tell us what you got hit with?" A. "Well, I am quite sure it was a stone." Later on cross-examination he testified: Q. "Now, you say that while Tommy and his two sisters were behind the automobile and you and Billy Paton and Chester Vallie were over in the Paton yard something hit you in the eye?" A. "Yes, sir." Q. "You say it was a stone?" A. "Yes. After I got hit there was a thud

in front of me, after I was struck." Q. "How big was the stone, would you say?" A. "About that big. (illustrating) Q. "Was it as big as a big agate?" A. "Just a little bigger than a big agate." Q. "When it dropped on the ground, did it drop in the grass?" A. "Yes." Q. "It dropped in the grass?" A. "Yes, sir." Q. "You heard the thud when it dropped?" A. "Yes, sir." None of the other witness knew that Dicky had been hit in the eye until Dicky told them.

There is no direct evidence as to how the stone, if it was a stone, came to strike Dicky in the eye. Whether it was thrown or fired from a slingshot none of the witnesses was able to testify as no one had seen any stones being thrown or fired from a slingshot. There is also no evidence of any stones in the Montgomery yard. All of the witnesses testified that the defendant had a slingshot but no one saw him shooting stones or any other missiles from it. The nearest approach to any evidence of Tommy firing the slingshot is the following testimony of Dick Masch: Q. "And at the time you got hit did you know that Tommy Montgomery was about to fire a slingshot?" A. "No." Q. "Could you see him at that moment?" A. "No." Q. "Can you give us any idea—strike that out. Did he fire a slingshot before then that afternoon?" A. "What do you mean, he fired it before?" Q. "At the time you got hit, consider that, but before that had he fired it that afternoon?" A. "Yes, I think he had once or twice." On cross-examination he testified: Q. "Now, as a matter of fact, Dicky, you don't know who threw that thing that hit you in the eye, do you?" A. "No."

Billy Paton testified that he didn't know whether Tommy had fired the slingshot before Dicky got hurt. Patricia Barrows gave the following testimony on this matter: Q. "After Tommy got his slingshot did he fire at anything that day?" A. "I can't remember at all." Q. "But he had it in his hand?" A. "Yes, he had it in his hand." Q. "Do you remember whether he was aiming with it, making

believe fire?" A. "He was aiming at the ground, I remember, once or twice." Q. "And whether he was firing anything in it?" A. "No. I don't think he fired anything." Q. "Now, at the minute that Dicky got hurt where was Tommy just then?" A. "Tommy was in back of the car." And Chester Vallie testified that it was too dark just before Dicky was hit to see a slingshot in Tommy's hands.

There is medical evidence that the injury to Dicky's eye was caused by a blow from some smooth object striking the eye with some force; that such object could have been a stone or, according to the testimony of Dr. Gilbert for the plaintiff, it could have been produced by "any missile of a flat, rounded surface striking the eye, accelerated tension, ball hitting the eye. Recently a fish pole, the end of a fish pole snapping back, hitting the eye, produced the same sort of thing." This witness testified further: "A baseball, if thrown hard enough to produce this would probably produce a worse condition than this. That is a pretty hard object. Depends on the velocity with which it comes. I think this type of eye can be produced by any object of a type that has not a cutting edge, rounded object thrown with any velocity whatever hitting the eyeball either directly or through the lids can produce a severe hemorrhage within the contents of the eye." He then testified in answer to direct questions that smooth object of any kind, an elbow, the butt of a gun, a stick, a branch of a bush except it is not so likely, and possibly also a fist could have produced the injury to the eye in the instant case. But from his examination of Dicky's eye, when he first examined it four days after the accident, he testified that he was of the opinion that the injury was caused by a "flat, rounded" object because there was no scratch on the lid and no scratch on the cornea.

Doctor Grossman, who examined Dicky's eye two hours after the accident occurred, and who operated on it two days later, substantially corroborated Dr. Gilbert on this

point, and in addition he had a history of the accident from the parents "that the boy was hit by a missile from a slingshot, and, in parenthesis, a 'stone'. It was their opinion that missile was a stone. I don't think they produced a stone, or showed me a stone, but it was their opinion the missile from the slingshot was a stone. I put it in parenthesis." He later testified that the parents told him that: "They thought it was a stone."

It is significant in this connection that immediately after the accident Dicky did not say to his playmates, Billy Paton and Chester Vallie, that he was hit by a stone. According to Billy, all that Dicky said after the accident was that he was hit in the eye. And Chester's version of what he said was ". . . Dicky was jumping back and forth behind the bush, and all of a sudden we saw him start to walk towards the house, and we went over and asked him what was the matter, and he said Tommy hit him in the eye with the slingshot." Patricia Barrows testified that either "Billy or Chester came back and told us Dicky had been hurt in the eye, and we went out to the front of the house and he told us that he had been hurt in the eye." She then answered the following questions: Q. "Was Dicky still out front?" A. "He was out in the front, and we went out and saw him, and then they went home." Q. "Did anybody say how he got hit in the eye, who hit him in the eye?" A. "I don't think we talked about that just then."

Apparently Dicky did not then tell anyone that he had been hit by a stone, and it would seem from the history given by his parents to Dr. Grossman that he did not tell them that he was hit by a stone but that "They thought it was a stone." The first definite information on that score came out in the cross-examination of Dicky, when he testified that he had been hit by a stone and compared it in size to a "big agate".

It is open to considerable doubt on this testimony that he was struck with a stone. The trial justice specifically

found "that the plaintiff was struck in the left eye . . . by a missile propelled from a slingshot operated by the defendant." There was evidence to support the finding that he was struck in the eye, but the important question in this case is, does the evidence support the remaining part of the trial justice's finding that such missile was propelled from a slingshot operated intentionally or negligently by the defendant?

There is certainly no direct evidence to support such a finding. There is no evidence that the defendant, at the time of the accident to Dicky Misch, fired the slingshot or propelled any missile from it. There is no evidence of any kind that, during the fifteen minutes after he came out with the slingshot and before Dicky was hit, he even aimed it in the direction of the boys who were playing with Dicky in the Paton yard. If the plaintiff can prevail on such evidence, it is only by being able to draw therefrom reasonable inferences that the defendant alone could have been responsible for the plaintiff's injury. That is the theory of the plaintiff's counsel, and such theory was adopted by the trial justice in developing the reasons in his rescript in support of his decision for the plaintiff.

We are obliged under our well-established rule to approve the findings of fact and the decision of the trial justice, unless we are convinced that they are clearly wrong or fail to do substantial justice between the parties. *Greene* v. *Rhode Island Hospital Trust Co.*, 60 R. I. 184, 197 A. 464. Moreover, in the sad circumstances of this case, from motives of human sympathy, against which even judges must on occasion struggle, we are reluctant to set this decision aside—but we must do so in the absence of legal evidence to support it.

The plaintiff in this case had the burden to prove his case by a fair preponderance of the evidence. It was not enough for him to show that he came by an injury that could have been caused by Tommy Montgomery firing a

missile from a slingshot. It was the plaintiff's duty to prove that the defendant actually fired a missile from his slingshot at the plaintiff, and that such missile caused the injury to his eye. It was also the plaintiff's duty, in order to sustain the trespass *vi et armis* alleged in the first count of his declaration, to prove that Tommy Montgomery intentionally fired a missile at him from his slingshot and that such missile caused the injury. In discharging this duty plaintiff was entitled to no help from the defendant. Whatever may be his obligation in morals, the defendant was not obliged in law to take the witness stand and thus possibly assist the plaintiff in discharging his burden. The defendant declined to take the stand and introduced no evidence on his behalf but rested his case entirely on the evidence presented by the plaintiff. He contends here that such evidence does not prove the plaintiff's case.

The plaintiff contends that such evidence does prove his case if all reasonable inferences are drawn therefrom in his favor. As we understand his argument, he would have us infer that, because Tommy Montgomery said to the girls that he would be on their side, and went into the house and later came out with a slingshot in his hand, he must have fired the slingshot at the boys in the Paton yard; that, as neither the lid nor the cornea of Dicky Misch's eye was scratched, the eye must have been struck by some smooth rounded object such as a stone; that as it was Dicky's left eye that was injured and as the medical testimony was that the object must have come from the front of Dicky it therefore did not come from either of his two companions, since they were to his right and slightly in his rear; that neither of the two girls in the Montgomery yard, even though they were in front of the plaintiff, could have done it, as all the testimony was positive that they were not throwing anything at the time Dicky was hit. From all this plaintiff strongly contends that further inferences are reasonable that he was hit by a missile, that such missile could only

have come from Tommy Montgomery and that it was propelled by Tommy from his slingshot.

We can find no support in law for such a pyramid of inferences. It seems to us this is building not merely one inference upon another but a whole series of inferences. The plaintiff cites two cases decided by this court within the last few years in support of his contention that such inferences are sufficient to justify a decision in his favor. *Chisholm* v. *S. S. Kresge Co.*, 55 R. I. 422; *Minutilla* v. *Providence Ice Cream Co.*, 50 R. I. 43. Plaintiff, in his brief, quotes extensively from those cases in order to establish what he claims is their similarity to the instant case. We are of the opinion, however, that there is no similarity. A careful reading of those decisions will disclose that any supposed similarity is more apparent than real.

The plaintiff has cited no case, and we have found none, which goes as far as we are asked to go in finding the defendant in the instant case liable on such a series of inferences. For the reasons above stated, therefore, we are of the opinion that the decision of the trial justice in the main case is erroneous and must be reversed. This being so, the decision in the father's case must likewise be reversed.

Defendant's exception to the decision in each case is sustained. On July 22, 1938, the plaintiff may appear and show cause, if any he has, why these cases should not be remitted to the superior court with instructions to enter judgment in each case for the defendant.

Moss, J., dissenting. I am unable to concur fully in the opinion of the court. I agree with the conclusion that the decision of the trial justice should not be sustained; but my reason for coming to that conclusion is different from the reason given in the majority opinion.

The rescript of the trial justice seems to me to indicate quite clearly that he bases his decision for the plaintiff largely on inferences which he draws from several things which he states as facts and which he says connect the de-

fendant with the assault on the plaintiff. One of these is that the defendant flourished the slingshot about "just prior to the injury received by the plaintiff." I can find no evidence that he did that immediately before the injury occured, which, as the plaintiff testified, was about fifteen minutes after the defendant came out with the slingshot.

The trial justice states also that just before the defendant arrived on the scene Ruth Montgomery had applied an epithet to the plaintiff and from this and the fact that she also went into the house to get some water to throw on the boys, he draws the conclusion that it is quite apparent "that what had begun in play had developed into something like a quarrel between the two girls and the three boys."

But the only testimony as to the epithet is that of the plaintiff, who said that it was applied early in the affair before the throwing of sticks began; and there is no evidence that the defendant knew anything about it. The two girls and the three boys mentioned were small children and I find no sufficient evidence to support the conclusion that there was a quarrel which would make anybody on one side wish to hurt anybody on the other.

For the reasons stated, I am of the opinion that the inference which the trial justice seems to draw, that the defendant intended to hit the plaintiff with a missile from the slingshot, and on which he seems to a great extent to rest his decision, is clearly not supported by the preponderance of the evidence. Whether, in the absence of this inference, he would have rendered a decision for the plaintiff is doubtful.

I therefore am of the opinion that the decision should be set aside; but I cannot agree with the majority of the court that there was no evidence in support of a decision for the plaintiff. Hence, it is my conclusion that a new trial of the case should be ordered.

CAPOTOSTO, J. concurs in the opinion of Moss, J.

*T. Dexter Clarke, George Paul Slade, Greenough, Lyman & Cross,* for plaintiff.

*Andrew P. Quinn, Alan P. Cusick, 2d,* for defendant.